UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

**RICHARD PATTIASINA**,

                                    Plaintiff,

              -against-

**TIMOTHY SEWALT, BRIAN S. GILMORE, "JOHN DOE"**, Correction Officers; **KRISTA L. PUTNEY, RITA. A GUSH, MICHELE H. POTRZEBOWSKI, DENISE M. KELSEY,** Nurses; and **MARK L. BRADT**, Superintendent at the Elmira Correctional Facility,

                                Defendants.
-----------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**12 Civ. 6170**

### PRELIMINARY STATEMENT

1.  On June 19, 2009 Richard Pattiasina, while entirely defenseless, was pushed to the ground and violently kicked in the groin by Correction Officer Timothy Sewalt without cause or justification, in the presence of Correction Officers Brian S. Gilmore and "John Doe", who callously and wantonly failed to intercede at any time throughout the vicious attack perpetrated against Mr. Pattiasina while he was under the care and custody of New York State Department of Corrections and Community Service ("DOCCS").   Thereafter, nurses at the Elmira Correctional Facility evidenced such deliberate indifference and callous and reckless disregard for the serious, emergent, medical condition of Richard Pattiasina that he remained helpless and without critical medical care for his fractured testicle, and suffered excruciating pain, over a period of seven (7) days from the injuries he sustained from the assault. Plaintiff commences this litigation against the officer who assaulted him, the correctional staff who failed to protect him, and the nurses who callously and recklessly failed to initiate appropriate treatment measures to address Mr. Pattiasina's serious emergent medical condition and/or otherwise treat Mr. Pattiasina, consistent

with good and accepted medical care.   Damages are sought pursuant to 42 U.S.C. §§1983, for

violation of Pattiasina's rights under the Eighth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 133.   This action arises under the

Eighth Amendment to the Constitution of the United States and 42 U.S.C. §1983. Venue is proper

in this district under 28 U.S.C. §§ 1391 (b).

## THE PARTIES

3.   Plaintiff **RICHARD PATTIASINA** resides in New York County.

4.   Defendant **TIMOTHY SEWALT** was at all relevant times herein a Correction

Officer at the Elmira Correctional Facility, and as such he was responsible for the safety and

security of the inmates confined therein, including Mr. Pattiasina.

5.   Defendant **BRIAN S. GILMORE** was at all relevant times herein a Correction Officer

at the Elmira Correctional Facility, and as such he was responsible for the safety and security of the

inmates confined therein, including Mr. Pattiasina.

6.   Defendant **"JOHN DOE"** was at all relevant times herein a Correction Officer at the

Elmira Correctional Facility, and as such he was responsible for the safety and security of the

inmates confined therein, including Mr. Pattiasina .

7.   Defendant **KRISTA L. PUTNEY, R.N.** was at all relevant times herein a Nurse at the

Elmira Correctional Facility and as such she was responsible for the provision of nursing care to

prisoners confined there, including Mr. Pattiasina.

8.   Defendant **RITA A. GUSH, R.N.** was at all relevant times herein a Nurse at the Elmira

Correctional Facility and as such she was responsible for the provision of nursing care to prisoners

confined there, including Mr. Pattiasina.

9.    Defendant **MICHELE H. POTRZEBOWSKI R.N.** was at all relevant times herein a Nurse at the Elmira Correctional Facility and as such she was responsible for the provision of nursing care to prisoners confined there, including Mr. Pattiasina.

10.   Defendant **DONNA M. KELSEY, R.N.** was at all relevant times herein a Nurse at the Elmira Correctional Facility and as such she was responsible for the provision of nursing care to prisoners confined there, including Mr. Pattiasina.

11.   Defendant **MARK L. BRADT** was at all relevant times the Superintendent of the Elmira Correctional Facility and as such he and was responsible for the safety and security of the inmates confined there.

12.   At all times referred to herein, defendants were state actors and acted under color of the laws, statutes and ordinances, regulations, policies, customs, and usages of the State of New York.

## FACTUAL ALLEGATIONS

13.   In June, 2009, Richard Pattiasina, at the age of thirty (30), and while confined under the care and custody of the New York State Department of Corrections and Community Service, was assigned to the Elmira Correctional Facility ("Elmira").

14.   At or around 3:45pm on June 19, 2009, Mr. Pattiasina was working in the facility's Mess Hall #3 serving bread to other inmates.

15.   At or around 3:45 pm defendant Sewalt yelled out "open the door" at or around the location of the back door of Mess Hall #3.

16.   Upon information and belief, defendant Sewalt's command was directed to the officer inside the Mess Hall, Officer Brown.

17.   Officer Brown did not immediately respond to defendant Sewalt's command to open

the door.

18.   At the time defendant Sewalt yelled "open the door" Mr. Pattiasina was serving bread to reception center inmates, and aware that Officer Brown was handing out spoons to the inmates.

19.   Having heard defendant Sewalt's command to "open the door", Mr. Pattiasina advised defendant Sewalt that Officer Brown was busy handing out the spoons.   Thereafter defendant Sewalt directed Mr. Pattiasina to go and get Officer Brown, to which Mr. Pattiasina responded, in sum or substance, "one second".

20.   Upon being advised that it would take "one second" before Mr. Pattiasina could leave his position, defendant Sewalt yelled to Mr. Pattiasina, in sum or substance, the following command: "Hey, little asshole Breadman, go get CO Brown to open the door for me."

21.   Upon information and belief, at the time defendant Sewalt verbally harassed Mr. Pattiasina, he was working the 3pm-11pm shift.

22.   Upon information and belief, at all times relevant officers assigned at Elmira to the 3pm-11pm shift engaged in a disproportionate number of incidents of verbal harassment, intimidation, and overly aggressive pat frisks.   Additionally, officers on the 3pm-11pm shift were known for retaliating against inmates who filed grievances, and for routinely denying inmates confined at Elmira access to essential services.

23.   Upon information and belief, at all times relevant, defendant Bradt was aware of the propensity of the officers assigned to the 3pm-11pm shift to engage in unwarranted acts of verbal harassment, intimidation, and overly aggressive pat frisks.   Defendant Bradt was additionally aware that officers on the 3pm-11pm shift were known for retaliating against inmates who filed grievances, and for routinely denying inmates confined at Elmira access to essential services.

24.   Upon information and belief, despite his knowledge of officer misconduct on the

3pm-11pm shift, defendant Bradt failed to take any corrective action and/or institute appropriate disciplinary action against the malfeasors.

25.    Upon information and belief, despite his knowledge of officer misconduct on the 3pm-11pm shift, defendant Bradt failed to assign a sufficient number of supervisory personnel to arrest the officers' known pattern of harassment against inmates.

26.    Upon information and belief, defendant Sewalt had a known history of misbehavior towards inmates assigned to Elmira before June 19, 2009.

27.    Upon information and belief, defendant Sewalt had been suspended from his position as a Correction Officer before June 19, 2009 as a result of complaints of misbehavior towards inmates assigned to Elmira.

28.  After defendant Sewalt referred to Mr. Pattiasina as "a little asshole Breadman", Mr. Pattiasina did not leave his post on the bread line to get Officer Brown.

29.    Upon information and belief, defendant Sewalt entered the Mess Hall shortly after his exchange with Mr. Pattiasina, with the assistance of Officer Brown.

30.    Upon entering the Mess Hall, defendant Sewalt directed Mr. Pattiasina, in sum or substance, to follow him into the kitchen corridor.

31.    After Mr. Pattiasina entered the kitchen corridor as directed by defendant Sewalt, Correction Officer Brown placed an object at the location of the door to block visual access to the corridor from inmates in the Mess Hall.

32.    At the time Mr. Pattiasina entered the kitchen corridor, defendants Gilmore and Doe were standing in and/or around the corridor.

33.    Once in the corridor, defendant Sewalt directed Mr. Pattiasina to stand against the wall, and he then proceeded to pat frisk Mr. Pattiasina.

34.    Upon information and belief, during all times relevant, the presence of a sergeant was required at Elmira during any pat frisk performed on an inmate.

35.    Upon information and belief, the presence of a sergeant was required during a pat frisk in order to protect inmates from abuses by correctional staff, and to protect correctional personnel from unfair allegations of abuse by inmates.

36.    Upon information and belief, pat frisks of inmates at Elmira which were conducted outside the presence of supervisory personnel were routinely conducted by officers for the purpose of intimidating inmates and/or to provoke a reaction from inmates.

37.    Upon information and belief, on June 19, 2009 defendants Sewalt, Gilmore and Doe were all aware that a pat frisk was not authorized at Elmira outside the presence of a sergeant.

38.    No sergeant was present when Mr. Pattiasina was pat frisked by defendant Sewalt on June 19, 2009.

39.    Upon information and belief, defendant Bradt became aware that defendant Sewalt had conducted a pat frisk on Mr. Pattiasina outside the presence of a sergeant, but he took no disciplinary action against defendant Sewalt in response to the pat frisk.

40.    During the pat frisk Mr. Pattiasina was defenseless, and engaged in no physically aggressive behavior toward defendants Sewalt, Gilmore and/or Doe.

41.    At all times relevant Mr. Pattiasina was 5'4'', and weighed 136 pounds, and presented no physical threat to defendants Sewalt, Gilmore and/or Doe.

42.    During the pat frisk of the Mr. Pattiasina, defendant Sewalt violently separated Mr. Pattiasina's legs with his foot, and pushed Mr. Pattiasina to the ground.

43.    Upon information and belief, a pat frisk, conducted in accordance with DOCCS' protocol, does not include the violent separation of an inmate's leg with the use of an officer's foot,

nor is an officer authorized to violently push an inmate to the ground.

44.   Once Mr. Pattiasina was on the ground, defendant Sewalt violently kicked Mr. Pattiasina in and around his groin area.

45.   At the time of defendant Sewalt's assault upon Mr. Pattiasina, Mr. Pattisina was surrounded by three corrections officers, and he was not presenting any physical threat to them whatsoever.

46.   Defendant Sewalt's vicious and violent attack upon Mr. Pattiasina was malicious and sadistic, and intended to cause Mr. Pattiasina pain and physical injury.

47.   Defendant Sewalt's vicious and violent attack upon Mr. Pattiasina served no correctional purpose.

48.   At no time during the physical assault upon Mr. Pattiasina did defendants Gilmore and Doe come to Mr. Pattiasina's aid, direct or stop defendant Sewalt from violently assaulting Mr. Pattiasina, and/or otherwise intervene on his behalf.

49.   At the conclusion of the assault upon the Mr. Pattiasina, defendant Sewalt escorted Mr. Pattiasina to his cell and placed him in keeplock.

50.   Upon information and belief, neither defendant Gilmore nor defendant Doe reported the assault perpetrated by defendant Sewalt upon Mr. Pattiasina to their superiors.

51.   Neither defendant Gilmore nor defendant Doe took any steps to assure Mr. Pattiasina received medical attention on June 19th, 2009, or at any other time, even though the force exacted upon Mr. Pattiasina was itself sufficient to evidence the need for emergency medical care.

52.   Mr. Pattiasina requested emergency medical assistance at or around 4:30 pm from the Shift C block officer due to the severe pain he was experiencing in his groin area, but the officer failed and refused to refer him to the facility's medical unit for evaluation and treatment.

53. At or around 11:00 p.m. Mr. Pattiasina requested emergency medical assistance from the Shift C block officer who assumed the post for the 11pm-7am shift due to the severe pain he continued to experience in his groin area.

54. Upon information and belief, the Shift C block officer, Officer Edwards, advised Sgt. Robinson that Mr. Pattiasina was complaining of abdominal pain.

55. In response to his second request for emergency medical assistance, Mr. Pattiasina was taken to the facility's medical unit.

56. On June 20, 2009, at or around 00:20 am while in the presence of nurse Putney, Mr. Pattiasina reported to Sgt. Robinson in sum or substance that he was experiencing severe pain in his groin area, and that during a pat frisk he had been kicked in the groin by Officer Sewalt at or around 3:30 p.m. on June 19th.

57. Upon information and belief, Sgt. Robinson took no action at or around 00:20 a.m., or at any other time during his shift on June 20th, to secure surveillance video taken at the location where Mr. Pattiasina reported that the assault upon him took place.

58. Sometime after the assault defendant Sewalt issued a misbehavior report against Mr. Pattiasina wherein he propounded false allegations of misbehavior against Mr. Pattiasina for the sole and exclusive purpose of covering-up his own felonious behavior.

59. The use of force by correction officers at Elmira is and was regulated by DOCCS' written policy and procedure.

60. The Misbehavior Report filed by defendant Sewalt does not contain any allegation whatsoever that he was compelled to utilize force against Mr. Pattiasina because Mr. Pattiasina presented a threat to the safety and/or security of the facility, or for any other reason.

61. The Misbehavior Report filed by defendant Sewalt does not contain any allegations

whatsoever that justified the use of force against Mr. Pattiasina under DOCCS' written policies and procedures.

62.   The Misbehavior Report filed by defendant Sewalt falsely reports that no force was used on Mr. Pattiasina on June 19, 2009.

63.   Upon information and belief, at or around June 19, 2009 defendants Gilmore and Doe filed written reports regarding the pat frisk conducted upon Mr. Pattiasina on June 19, 2009. Neither defendant Gilmore nor defendant Doe alleged any facts or circumstances that presented on June 19, 2009 to justify the use of force against Mr. Pattiasina under DOCCS' written policies and procedures.

64.   Upon hearing Mr. Pattiasina's assault complaint, defendant Putney failed to physically examine Mr. Pattiasina consistent with good and accepted nursing protocols, and/or otherwise treat his fractured testicle and/or address his complaints of severe pain consistent with good and accepted medical care.   Instead, defendant Putney, with depraved indifference to his serious medical needs, authorized Mr. Pattiasina's return to keeplock in his cell.

65.   While pictures were taken of Mr. Pattiasina while he was in the medical unit, no picture was taken that depicts the condition of his groin area.

66.   All of the pictures taken of Mr. Pattiasina during the early morning hours of June 20, 2009 cover-up the condition of Mr. Pattiasina's groin area.

67.   At the time the pictures of Mr. Pattiasina were taken, his groin area, including his testicles, was swollen, and he was in severe pain.

68.   Upon return to his cell Mr. Pattiasina continued in excruciating pain.

69.   While remaining in his cell without medical treatment, Mr. Pattiasina filed a grievance dated June 20, 2009 in regard to the assault upon him by defendant Sewalt.

70.   In his grievance, Mr. Pattiasina described the assault by defendant Sewalt, and specifically requested protection from retaliation for the filing of his grievance; a review of the surveillance video; and an investigation into the assault.

71.   On June 21, 2009 between 3:00pm-3:30 pm Mr. Pattiasina was threatened by Correctional Officer Daniel C. Knuth in regard to the grievance he filed against defendant Sewalt, and advised in sum or substance that there would be serious trouble for him if he pursued his grievance.   Officer Knuth's threat was made for the sole purpose of chilling Mr. Pattiasina's exercise of his First Amendment rights, and did not reasonably advance a legitimate correctional goal.   As a result of Officer Knuth's threat, Mr. Pattiasina feared for his life, and he filed a grievance in an effort to protect himself from harm.   Upon information and belief, no disciplinary action was ever initiated against Officer Knuth in regard to the threat he made against Mr. Pattiasina.

72.   On June 22, 2009 Mr. Pattiasina was seen by defendant Gush in response to his ongoing complaints that he was in need of emergency medical assistance.   Although defendant Gush was aware that Mr. Pattiasina asserted that he was kicked in the groin days before, and although she observed that his testicle was swollen and tender, defendant Gush failed to physically examine Mr. Pattiasina consistent with good and accepted nursing protocols, and/or otherwise treat his fractured testicle and/or address his complaints of severe pain consistent with good and accepted medical care.   Instead, defendant Gush, with depraved indifference to his serious medical needs, simply advised Mr. Pattiasina to take motrin every 4-6 hours, and effectuated his return to keeplock in his cell.

73.   On June 23, 2009 Mr. Pattiasina was seen by defendant Potrzebowski in response to his ongoing complaints that he was in need of emergency medical assistance.   Although

defendant Potrzebowski was aware that Mr. Pattiasina asserted that he was kicked in the groin days before, and that he continued to have pain in his right testicle and groin area, and although she observed that he appeared uncomfortable and was walking hunched over, Defendant Potrzebowski failed to physically examine Mr. Pattiasina consistent with good and accepted nursing protocols, and/or otherwise treat his fractured testicle and/or address his complaints of severe pain consistent with good and accepted medical care.   Instead, defendant Potrzebowski, with depraved indifference to his serious medical needs, effectuated Mr. Pattiasina's return to keeplock in his cell.

74.   On June 24, 2009 Mr. Pattiasina appeared before Lt. Schornstheimer, who was the assigned Hearing Officer in regard to the Misbehavior Report filed by defendant Sewalt.   During that appearance Mr. Pattiasina complained to Lt. Schornstheimer that he was being denied medical care for the injuries he sustained during defendant Sewalt's assault upon him, and he further requested that the videotape of the area in which the assault occurred be secured.

75.   Upon information and belief Lt. Schornstheimer made no effort to secure the videotape requested by Mr. Pattiasina on June 24, 2009, nor did he take any steps to assist Mr. Pattiasina in getting medical treatment consistent with good and accepted medical care.

76.   On June 25, 2009 Mr. Pattiasina was seen by defendant Kelsey in response to his ongoing complaints that he was in need of emergency medical assistance.   Although defendant Kelsey was aware that Mr. Pattiasina had complained for days that he was injured in his testicle and groin area, Defendant Kelsey failed to physically examine Mr. Pattiasina consistent with good and accepted nursing protocols, and/or otherwise treat his fractured testicle and/or address his complaints of severe pain consistent with good and accepted medical care.   Instead, defendant Kelsey, with depraved indifference to his serious medical needs, merely put Mr. Pattiasina on a list to be seen by medical personnel the following day, and effectuated Mr. Pattiasina's return to

keeplock in his cell.

77.   On June 26, 2009 Mr. Pattiasina was seen by Physician's Assistant Northrup, who examined him and immediately concluded that he was in need of emergency medical assistance.

78.   On June 26, 2009 Mr. Pattiasina was finally transferred to a hospital for evaluation and treatment.

79.   The evaluation of Mr. Pattiasina's condition at the Arnot Ogden Medical Center on June 26, 2009 evidenced a painful, swollen, hard right testicle, and the need for immediate surgical intervention to repair Mr. Pattiasina's fractured right testicle.

80.   On June 26, 2009 Mr. Pattiasina was given prescription pain medication and surgery was performed to repair his fractured right testicle.

81.   Mr. Pattiasina continues to suffer from pain caused by the fracture to his right testicle.

82.   Mr. Pattiasina has permanent injury to his right testicle as the result of the assault perpetrated upon him on June 19, 2009 by defendant Sewalt.

**FIRST CLAIM**
(EXCESSIVE FORCE)

83.   Mr. Pattiasina repeats and realleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 82.

84.   Defendant **SEWALT's** assault upon Mr. Pattiasina on June 19, 2009 was unauthorized, unlawful, and applied maliciously and sadistically to cause Mr. Pattiasina physical injury.

85.   Defendant **SEWALT's** assault upon Mr. Pattiasina on June 19, 2009 occurred in the presence of defendants **GILMORE,** and **DOE**, who wantonly and recklessly, and with depraved indifference to human life, failed to aid Mr. Pattiasina, and/or direct or stop defendant Sewalt from

violently assaulting Mr. Pattiasina, and/or otherwise intervene on his behalf.

86.   Defendant **SEWALT**, in assaulting Mr. Pattiasina, and defendants **GILMORE,** and

**DOE**, in failing to protect Mr. Pattiasina, inflicted a cruel and unusual punishment against Mr.

Pattiasina in violation of his rights under the Eighth Amendment to the United States Constitution.

87.   As a result of defendants' violation of Mr. Pattiasina's constitutional rights, Mr.

Pattiasina suffered severe pain and emotional injury, and permanent physical injury to his testicle.

Accordingly, Mr. Pattiasina, is entitled to compensatory damages against defendants **SEWALT,**

**GILMORE,** and **DOE** jointly and severally in the amount of $20,000,000 and punitive damages

against each defendant in the amount of $1,500,000.

**SECOND CLAIM**
(DELIBERATE INDIFFERENCE
BY MEDICAL PERSONNEL)

88.  Mr. Pattiasina repeats and realleges as if fully set forth herein the allegations contained

in paragraphs numbered 1 through 82.

89.  The failure of defendants **PUTNEY, GUSH, POTRZEBOWSKI, and KELSEY** to

provide Mr. Pattiasina with adequate treatment for his fractured testicle demonstrated deliberate

indifference towards Mr. Pattiasina's serious medical condition, constituting cruel and unusual

punishment in violation of the Eighth Amendment to the United States Constitution.

90.   As a result of defendants' violation of Mr. Pattiasina's constitutional rights, Mr.

Pattiasina suffered severe pain and emotional injury, and permanent physical injury to his testicle.

Accordingly, Mr. Pattiasina, is entitled to compensatory damages against defendants **PUTNEY,**

**GUSH, POTRZEBOWSKI, and KELSEY** jointly and severally in the amount of $5,000,000

and punitive damages against each defendant in the amount of $1,000,000.

## THIRD CLAIM
### (EIGHTH AMENDMENT CLAIM
### AGAINST SUPERINTENDENT)

91.   Mr. Pattiasina repeats and re-alleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 82.

92.    Defendant **BRADT** was reckless, callous and deliberately indifferent to his supervisory responsibilities, including but not limited to the provision of adequate staffing, hiring, training, supervision and control over correctional staff assigned to the Elmira Correctional Facility.

93.   The failure of defendant **BRADT** to provide qualified and trained correctional officers and supervisory personnel, and appropriate procedures for responding to incidents of alleged misbehavior by correctional staff at Elmira demonstrated a depraved indifference to the life and safety of the inmates confined at the facility, constituting cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

94.   As a result of defendant **BRADT's** violation of Mr. Pattiasina's constitutional rights, Mr. Pattiasina suffered severe pain and emotional injury, and permanent physical injury to his testicle.   Accordingly, Mr. Pattiasina, is entitled to compensatory damages against defendant **BRADT** in the amount of $5,000,000 and punitive damages against each defendant in the amount of $1,000,000.

## JURY TRIAL DEMANDED

95.   Mr. Pattiasina demands a trial by jury.

**WHEREFORE,** plaintiff respectfully request that this Court enter an Order granting him compensatory and punitive damages against each defendant on the first, second and third causes of action; granting plaintiff reasonable attorneys' fees, costs and disbursements pursuant to the Civil

Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. §§ 1988; and granting plaintiff such other

and further relief as this Court deems just and equitable.


Dated: Yonkers, New York
       August 9, 2012

                                               **KOOB & MAGOOLAGHAN**
                                               *Attorneys for Plaintiff*

                                               By:___/s Joan Magoolaghan___
                                             Joan Magoolaghan, Esq. [501543]
                                             221 Devoe Avenue
                                             Yonkers, New York 10705
                                             Tel.: (914) 964-8888
                                             jm@kmlaw-ny.com